**PURE OIL COMPANY v DUFFY et**

Ohio Appeals, 2nd Dist, Miami Co

No 408. Decided June 27, 1941

Pickrel, Schaeffer & Ebeling, Dayton, for plaintiff-appellant.

Murphy, Murphy & Mayl, Dayton; Faust, Faust & Faust, Troy, for defendants-appellees.

## OPINION

By GEIGER, PJ.

This case comes into this court on appeal on questions of law and fact from a judgment of the Court of Common Pleas of Miami County and involves the question as to which of two leases issued by the State of Ohio, one to the plaintiff and the other to the defendant, is a valid lease entitling the party named therein to hold the property in question.

The plaintiff alleges that it has a legal estate in and is entitled to the possession of the premises described which are a part of the canal land located in the County of Miami. It is alleged that the defendants, Charles F. Duffy and W. R. Maringer, are partners under the firm name of Purol Service Station and that they unlawfully keep the plaintiff out of the possession of the premises.

For a second cause of action it alleges that the defendants were the tenants of the plaintiff under a written lease which expired on the 10th of October, 1938, at a monthly rental of $40.00 and that at the expiration of said lease the defendants continued to occupy the premises, but have failed to pay the monthly installments beginning September, 1938, and that there is now due the plaintiff from the defendants for rent the sum of $520.00; that on the 1st day of September, 1939, plaintiff served a written notice on the defendants to vacate the premises and that by reason of the foregoing plaintiff is entitled to the possession of the premises. Plaintiff asks for a judgment for the possession of the premises and for the sum of $520.00.

The defendants answer admitting certain allegations, among them that they were tenants of plaintiff under a written lease expiring on the 10th of October, 1938; that under the terms of said lease they are indebted to the plaintiff in the sum of $40.00, an amount tendered to the Clerk of the Court; they deny all other allegations.

Defendants further allege that since the 10th day of October, 1938, they have occupied the premises under a lease agreement between the defendant, Charles F. Duffy, and the State of Ohio, the owner of the property, by the terms of which said premises have been leased to the defendant for a term of 15 years at an annual rental of $480.00. They pray for an order that the defendants or defendant Charles F. Duffy are entitled to the possession of the premises under the lease.

To this answer a reply is filed denying that since the 10th of October, 1938, the defendants have occupied the premises under a lease between the defendants and the State of Ohio and further deny that the premises have been leased to the defendant for a

term of 15 years and that the defendants have any right to said premises.

Upon hearing, the court below found on the issue for the defendants and against the plaintiff and that the petition of the plaintiff should be dismissed. A motion for new trial was filed. On November 29, 1940, an entry was filed overruling the motion and dismissing the petition at the costs of plaintiff.

A notice of appeal was given on questions of law and fact from the final judgment of the 29th of November, 1940.

The facts, other than those admitted in the pleadings, are practically all covered by the deposition of Carl G. Wahl who, at the time the leases hereinafter noted were made, was Superintendent of Public Works.

There is exhibited a canal land lease to Charles Duffy of the property in question for an oil and gasoline filling station for a term of 15 years, the same being signed by the State of Ohio, Department of Public Works by Carl Wahl, Superintendent of Public Works and by Charles F. Duffy, party of the second part, approved by Governor Davey on October 6, 1938 and by Herbert Duffy, Attorney General, on October 8, 1938.

Under date of October 10, 1938, a letter was written by Herbert Duffy as Attorney General stating that he finds the provisions of the lease to Charles F. Duffy are in conformity with the act of the Legislature and he therefore approves the lease.

There is further exhibited a canal land lease to the Pure Oil Company for the same premises, the same purpose, the same rental and the same terms as that named in the Duffy lease with a copy of a resolution by the Board of Directors of The Pure Oil Company by which the lease was authorized. This lease is undated but is accepted by the resolution of the Pure Oil Company under date of December 2, 1938, and approved by Governor Davey on December 14th and by Duffy, Attorney General, on December 15, 1938.

On December 16, 1938, the Attorney General furnished an opinion to Wahl, Director of Public Works, approving the lease to the Pure Oil Company in substantially the same terms as his approval was given of the lease to Duffy.

On December 27, 1938, an opinion by the Attorney General was furnished to Wahl, Superintendent, in which the lease to Charles F. Duffy was discussed and it was stated that when it was presented to the Attorney General for approval it was in the form of a bilateral contract, that is the lease was signed and otherwise executed by the Superintendent of Public Works in the name of the State of Ohio and by Duffy as lessee. "Inasmuch as you were clearly authorized to execute this lease under the statutory provisions above noted * * * and the provisions of the lease were accepted by Charles F. Duffy * * * this lease required only the approval of the Governor and the Attorney General to make this lease * * * a valid contract" between the State and Duffy and under the facts stated "this lease instrument thereupon became a valid and subsisting lease" covering the property for a term of 15 years. The letter states that sometime later, about December 15th, Wahl submitted to the Attorney General for examination and approval another lease executed to the Pure Oil Company. There was nothing in the provisions of this lease which indicated that the land was covered by an existing lease and the same was approved by the Attorney General as a formal matter. The letter further states that some days after the approval of the lease to the Pure Oil Company the Attorney General was advised that the land was the identical parcel which was leased by the State to Charles F. Duffy. The Attorney General then states that he is required to advise the Superintendent that the lease issued to Charles F. Duffy was and is a valid and subsisting contract between the State and Duffy for a period of 15 years and that consequently the later lease executed to the Pure Oil Company is invalid and without legal effect as a lease. He

advised the Superintendent that Duffy is entitled to a copy of the lease and the Superintendent is advised to forward him a copy.

This presents the picture of facts in connection with this transaction which may be summarized by the statement that the Pure Oil Company in 1923 had entered into a lease with the State of Ohio for the land in question for a term of 15 years, said lease expiring on the 1st day of October, 1938; that the Pure Oil Company sublet the property to Duffy and Maringer as partners for Purol Oil Service Station; that Duffy and his partner made an application for a lease on August 7, 1936; that the Pure Oil Company made a like application on May 18, 1937; that a lease approved by the Governor on October 6, 1938 was executed to Charles F. Duffy approved by the Attorney General on October 8, 1938, but under the instructions from the Governor final delivery of this lease was withheld. An identical lease to the Pure Oil Company was approved by the Governor on December 14, 1938 and by the Attorney General on December 15, 1938. The question as to which is the valid and subsisting lease is the matter before the court.

## CLAIM OF PARTIES AND DECISION OF THE COURT.

Counsel for each side have filed carefully prepared briefs and the trial court has rendered a carefully considered opinion.

Appellant's contention is that it holds the only valid lease from the State of Ohio and that its right thereto is based upon (1) Statutory rights (2) The delivery of copies of the lease and (3) The payment and acceptance of the rent. The statute relied upon is the last paragraph of §14178-30 GC, which will be alluded to hereafter.

It is claimed by the appellant that it has the only delivered lease and that it has paid rent, which has been accepted by the treasury of the State. Appellant in support of his claim of statutory rights relies strongly upon the case of **Conger v Quaker Oats Company, 25 Abs 353.**

Counsel for appellees recite the facts and urge that on the 8th of October, 1938, there was no lease upon the land, the lease of the Pure Oil Company having expired on the 1st day of October, 1938, and it asserts that the State, on or after the 1st day of October, 1938, had full authority to lease the ground to any individual. They rely upon the provisions of §14178-45 GC, giving to the Superintendent of Public Works the right to have the property appraised and to lease the same. They take the position that §14178-30 GC does not give to the Pure Oil Company any prior right of renewal at the termination of its then existing lease; that the statute is only mandatory as to any leases which existed at the time it was enacted, but does not affect any new leases after that date, the right of renewal being a right of the Superintendent of Public Works and not of the lessee. Counsel assert and urge that the case of **Conger v Quaker Oats Company, 25 Abs 353,** is no authority for the position that the appellant, by virtue of its prior lease, had a right to a renewal of the lease superior to the right of the appellee to secure from the State a new lease and it is urged that Duffy has the only valid and subsisting lease and that the appellant has no right of possession or other claim upon the land.

Much of the briefs of both counsel for plaintiff and defendant are concerned with the law relating to the requirement for a delivery of the leases and to the authority of various state officials to make such delivery. Counsel for appellant claim that the Governor, as the supreme executive authority, had a right to deliver a copy of the lease to the appellant thus making the lease an effective instrument. Appellees, however, answer that the Governor had no such right to deliver the lease but that the same was a right that belonged to the Superintendent and that inasmuch as the lease to Duffy was signed by him that it was a bi-lateral contract signed by each of

the parties to be bound and that therefore actual delivery was not required, that such delivery could be inferred from the fact that each of the parties had signed it.

The court below in its decision went to great pains in setting out the evidence and analyzing the law claimed to be pertinent. As to the last paragraph of §14178-30 GC, the court arrives at the conclusion that the same can not be construed to give to the lessees at that particular time any first option upon new leases, but is merely directory to the Superintendent granting him power to lease in the future, canal lands not suitable for their primary purposes or for highways and parks. The court below discusses and discards the claim asserted by the plaintiff (appellant) that it had acquired any rights by virtue of having paid rentals which were accepted by the State and the court also discards as of no avail the fact that the Governor delivered a copy of the lease to the plaintiff (appellant) and the court finally states, in substance, neither party is shown by the evidence conclusively to have had a proper manual delivery of the copy and that neither is in a better position than the other, except as it may be said that the defendant's (appellee's) lease was actually executed and approved before the plaintiff's (appellant's) and the court arrives at the conclusion that inasmuch as the plaintiff (appellant) in an action to recover real property must recover on the strength of his own title and not on the weakness of his adversary's and that the burden is upon the plaintiff (appellant) who must sustain his contention upon the strength of its own position.

This court takes the position that it need not argue or determine many of the points asserted by counsel such as the execution or delivery of either lease by proper officials or the inference that may be drawn from the fact that the State has accepted certain rentals from the appellant. We feel that the case may be safely decided upon statutory grounds and pertinent decisions of the court and that the Attorney General in his letter of December 28, 1938 to Wahl, Superintendent of Public Works presents the only question that requires our examination. In this letter he refers to both leases, their signatures, approval and whatever other matter was incident to the proper execution of both leases. He states that some days after his approval of the Pure Oil lease, he was advised that the land covered was the identical land leased to Charles F. Duffy. He then states,

"In this situation, I am required to advise you that the lease executed to Charles F. Duffy was and is a valid and subsisting contract by and between the State of Ohio and said Charles F. Duffy effecting a lease of this parcel of land to Charles F. Duffy as the lessee therein named for a period of fifteen years; and that consequently, the later lease executed by you to The Pure Oil Company was and is invalid and without legal effect as an instrument for the lease of this property."

The Attorney General advised the Superintendent to send Duffy a copy of the lease.

The real estate in question is a part of the Miami Canal property and the controlling sections are within Chapter 9 captioned "THE CANALS" which is intended to cover all questions relating to the operation of canals or abandonment of the lands for canal purposes and the leasing of canal property no longer useful for that or other related purposes.

Sec. 14178-30 GC specifically has reference to legal termination of leases and provides, in substance, so far as relates to the matter here under discussion, that leases heretofore granted to any person shall become void within 60 days after the same have been designated by the director as necessary in contemplation of highway improvements adjacent to the canal lands abandoned for actual or hydraulic purposes. It provides further that all other leases shall be terminated by the Su-

perintendent provided that the same have been designated as necessary for highway purposes by the Director of Highways or that may be designated for public park purposes. This act was effective August 5, 1931.

The last paragraph provides that upon taking effect of the act, the Superintendent of Public Works is hereby directed and authorized to take any and all steps necessary to legally terminate said leases where the land is to be used for the designated purposes but "when not required for such purposes both land and water leases shall be continued in full force and effect with the right of renewals thereof at the expiration of the same * * * ".

Sec. 14178-45 GC provides that at the end of two years from the date of the act any portion of said abandoned canal that has not been designated for highway improvements or has not been leased for public park purposes may be appraised by the Superintendent of Public Works and leased to responsible parties for a term of 15 years and multiples thereof up to 90 years, or for a term of 99 years renewable thereafter subject to the approval of the Governor and Attorney General.

In the chapter relating to the Board of Public Works we find §§13965, 13966 and 13967 providing that lands not necessary for maintenance and navigation may be leased; providing for lease of unoccupied lands and designating when rights of occupants are forfeited. These three sections, in substance, provide that lands not necessary for maintenance or navigation of canals may be leased by the commission; that any owner of an existing lease may surrender the same in order to have the land described included in a new lease not for a greater period than 15 years.

These last three sections manifestly have no direct relation to the right of renewal of a lease formerly held by the Pure Oil Company for the reason that there is no allegation or showing that the Pure Oil Company actually had any ownership in the building or any

other valuable structures. Neither do the statutes relate to any right that the appellees may have for a lease for the reason that such appellees, while apparently the owner of the structure by virtue of purchase, were not, as a matter of fact, lessees of the State, they securing their right of occupancy by virtue of a sub-lease made by the Pure Oil Company. The appellees had no contractual relations with the State but their contract was exclusively with the Pure Oil Company, the lessee.

However, these sections and their provisions are of importance in determining the meaning and authority of certain phraseology in the case of Conger v Quaker Oats Company, supra. The provisions of §§13966 and 13967 are passed upon as they affect the right of the Quaker Oats Company, a lessee, who had constructed valuable improvements upon the property. It is there held that a corporation which has erected valuable buildings on canal lands is entitled to a lease of said lands upon the same terms and conditions as any other person or corporation would or might be entitled to under the law and where the corporation has made application for a lease the department is incapacitated from leasing the land to any one else until the right of the corporation is voided by the department or such right is lost by some act of the corporation.

The provisions of §14178-30 GC are to the effect that when not required for the enumerated public purposes the leases shall be continued in full force and effect with the right of renewals thereof at the expiration of the same.

The phraseology of §13966 is that the person owning the lease (with the structure thereon) shall be entitled to such lease of said land or lands upon the same terms and conditions as any other person or corporation would or might be entitled to under this act if there was no building or other valuable structure upon said land.

The phraseology of §14178-30 is, upon taking effect of this act the Superintendent of Public Works is hereby directed and authorized to take any and

all steps necessary to legally terminate said leases where the land is to be used for that, but when the land is not required for the stated purposes both land and water leases shall be continued in full force and effect with the right of renewals thereof at the expiration of the same.

The phraseology is not the same but the purpose of providing a right to renew a lease seems to be identical in each section. We may then turn again to the opinion in the Conger case. The court, after reciting the facts in that case states, in substance, that under the provisions of the two sections the company, under the facts, was entitled to a lease of said land "upon the same terms and conditions as any other person or corporation would or might be entitled to" under the law. The court states,

"As we construe the law, until that right was voided by the department of public works in the manner provided for voiding the same by the statute, or such right was lost by some act of said company, the department of public works was incapacitated from leasing said land to said Conger or anyone else."

In the case at bar the Pure Oil Company had an original lease dated October 1, 1923, for a period of 15 years, expiring on October 1, 1938. Long before its expiration, to-wit, on May 18, 1937, it made an application for renewal. This application was preceded by an application by Duffy, a sub-lessor of the Pure Oil Company under date of October 7, 1936, for the same lease. If the Pure Oil Company had the right of renewal it had the right to file its application therefor at any time prior to the termination of the lease on October 1, 1938, and that right could not be taken from it by the appellee's prior dated application. Having made the application in due time, it was the duty of the State Officials, as a minis-terial act, to take such steps as would lodge with the Pure Oil Company a renewal of its lease. The Pure Oil Company was not, if in the possession of this right, subject to the whim or neglect or perhaps the politics of the state officials in awarding the new lease to the sub-tenant merely because that tenant had made a prior application or had secured a lease approved on October 6, 1938, whereas the lease of the Pure Oil Company was approved at the later date of December 14, 1938. The Pure Oil Company had in no way indicated that it intended to give up its right to a renewal, nor had it taken any steps that may be construed as a forfeiture of such a right. That right was secured to it by statute, if we are to give credit to the principles announced in the Conger case, and we can see no reason why those principles do not apply in the interpretation of the right granted to a prior lessee to have his lease renewed.

It is not of consequence what state official signed the lease or whether the same was delivered by the proper officer to the Pure Oil Company. This is an action in equity and the appellant should not be deprived of any if its rights because the State, upon whom the obligation of issuing a new lease was imposed by statute, had not properly functioned to make that lease effective. If there is any formality which has been overlooked, it is within the power of the court to order that the State give a proper lease to The Pure Oil Company in accordance with its rights under the statute.

Plaintiff claims in its petition that there is due to it from the defendant for the use and occupancy of the property beginning on September 1, 1938, a total of $520.00 up until the filing of the petition.

The order of the court will be that the appellant is entitled to the possession of the property and to recover from the defendant the sum of $520.00 and costs.

Judgment and finding accordingly.

BARNES & HORNBECK, JJ., concur.